KATIE TOWNSEND (SBN 254321)
ktownsend@rcfp.org
GRAYSON CLARY*
 * *pro hac vice application forthcoming*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone: 202.795.9300
Facsimile: 202.795.9310

JEFF GLASSER (SBN 252596)
jeff.glasser@latimes.com
LOS ANGELES TIMES COMMUNICATIONS LLC
2300 E. Imperial Highway
El Segundo, CA 90245
Telephone: 213-237-7077

*Counsel for Non-Party Intervenor*
LOS ANGELES TIMES COMMUNICATIONS LLC

FILED
CLERK, U.S. DISTRICT COURT
9/16/24
CENTRAL DISTRICT OF CALIFORNIA
BY: SE DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:20-cr-00612-ODW-1 |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION OF NON-PARTY LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL** |
| v. | |
| MARK HANDEL, | Date: September 30, 2024 |
| Defendant. | Time: 10:00AM |
| | Judge: Hon. Otis D. Wright, II |

**REPLY IN SUPPORT OF MOTION OF NON-PARTY
LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

# TABLE OF CONTENTS

Page:

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION .................................................................................................. 1

ARGUMENT .......................................................................................................... 4

I.    The First Amendment and common law presumptions of access attach to the Handel Materials. ............................................................................... 4

II.    The Government has not demonstrated that its proposed redactions are necessitated by interests sufficient to overcome either the First Amendment or the common law presumptions of public access. .................................. 8

    A.    Redacting all references to uncharged parties cannot be justified here. ..... 8

    B.    The Government's remaining interests would justify—at most—tailored redactions that preserve the ability of the press and public to understand this case's connection to possible public corruption. ............ 10

CONCLUSION .................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s):

**Cases:**

*Associated Press v. U.S. District Ct. for Cent. Dist. of Cal.*,
    705 F.2d 1143 (9th Cir. 1983) ............................................................................ 4

*Civ. Beat L. Ctr. for the Pub. Int., Inc. v. Maile*,
    No. 23-15108, 2024 WL 3958954 (9th Cir. Aug. 28, 2024) ................................ 4

*Courthouse News Serv. v. Planet*,
    947 F.3d 581 (9th Cir. 2020) ............................................................................... 6

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
    809 F.3d 1092 (9th Cir. 2016) ............................................................................. 6

*Garrison v. Louisiana*,
    379 U.S. 64 (1964) ............................................................................................ 12

*In re Appl. of Consumer Watchdog & L.A. Times Commc'ns LLC*,
    No. 2:24-cv-01650, 2024 WL 2104448 (C.D. Cal. Apr. 11, 2024) ............... 9, 13

*In re Appl. of N.Y. Times Co. for Access to Certain Sealed Ct. Recs.*,
    585 F. Supp. 2d 83 (D.D.C. 2008) .................................................................... 11

*In re Grand Jury Subpoena*,
    103 F.3d 234 (2d Cir. 1996) ................................................................................ 5

*In re L.A. Times Commc'ns LLC*,
    28 F.4th 292 (D.C. Cir. 2022) ........................................................................... 10

*In re L.A. Times Commc'ns LLC*,
    628 F. Supp. 3d 55 (D.D.C. 2022) ............................................................ 2, 3, 12

*In re McClatchy Newspapers, Inc.*,
    288 F.3d 369 (9th Cir. 2002) ........................................................................... 3, 9

*In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*,
    562 F. Supp. 2d 876 (S.D. Tex. 2008) ......................................................... 11, 12

*In re Search Warrants Issued on April 26, 2004*,
　353 F. Supp. 2d 584 (D. Md. 2004) ................................................................. 11

*In re Time Inc.*,
　182 F.3d 270 (4th Cir. 1999) ............................................................................ 4

*Kamakana v. City & County of Honolulu*,
　447 F.3d 1172 (9th Cir. 2006) ...................................................................... 7, 8

*Metlife, Inc. v. Fin. Stability Oversight Council*,
　865 F.3d 661 (D.C. Cir. 2017) ......................................................................... 7

*Oregonian Publ'g Co. v. U.S. Dist. Ct. for Dist. of Or.*,
　920 F.2d 1462 (9th Cir. 1990) ......................................................................... 8

*Richmond Newspapers, Inc. v. Virginia*,
　448 U.S. 555 (1980) ..................................................................................... 3, 5

*United States v. Anderson*,
　799 F.2d 1438 (11th Cir. 1986) ....................................................................... 4

*United States v. Custer Battlefield Museum & Store*,
　658 F.3d 1188 (9th Cir. 2011) ....................................................................... 10

*United States v. Gonzales*,
　150 F.3d 1246 (10th Cir. 1998) ....................................................................... 4

*United States v. Hubbard*,
　650 F.2d 293 (D.C. Cir. 1980) ......................................................................... 2

*United States v. Kott*,
　135 F. App'x 68 (9th Cir. 2005) .................................................................. 2, 9

*United States v. Kravetz*,
　706 F.3d 47 (1st Cir. 2013) .............................................................................. 4

*United States v. Kwok Cheung Chow*,
　No. 14-cr-00196, 2015 WL 5094744 (N.D. Cal. Aug. 28, 2015) ..................... 7

*United States v. Miske*,
　No. 19-cr-00099, 2022 WL 1073797 (D. Haw. Apr. 8, 2022) ..................... 4, 6

*United States v. Nickens*,
   809 F. App'x 584 (11th Cir. 2020) ................................................................ 4

*United States v. Sleugh*,
   896 F.3d 1007 (9th Cir. 2018) ..................................................................... 5

*United States v. Smith*,
   787 F.2d 111 (3d Cir. 1986) ....................................................................... 10

*United States v. Urlacher*,
   136 F.R.D. 550 (W.D.N.Y. 1991) ................................................................ 7

*United States v. Wecht*,
   484 F.3d 194 (3d Cir. 2007) ........................................................................ 6

*Welsh v. City & County of San Francisco*,
   887 F. Supp. 1293 (N.D. Cal. 1995) ........................................................... 9

**Other Authorities:**

Ralph Vartabedian, *How a Real Estate Boom Drove Political Corruption in Los Angeles*, N.Y. Times (Aug. 29, 2024) ................................................. 1, 3

**INTRODUCTION**

By the U.S. Attorney's Office's own account, Los Angeles has seen "pay-to-play schemes run amok" and an "extraordinary" flourishing of corruption stemming from the real estate industry. Ralph Vartabedian, *How a Real Estate Boom Drove Political Corruption in Los Angeles*, N.Y. Times (Aug. 29, 2024), https://nyti.ms/3MKXkUA; *see also, e.g.*, Michael Finnegan, *L.A. Bribery Trial Spotlights City Hall Corruption in Run-Up to Election*, L.A. Times (Oct. 28, 2022), https://perma.cc/54X8-WJ7D. And as the United States (the "Government") candidly acknowledges in its Opposition, the prosecution of Defendant Mark Handel stemmed from an "investigation of public officials," Opp'n to Mot. of Non-Party L.A. Times Commc'ns to Intervene and Unseal at 1 ("Gov't Opp'n"), driven by "allegations of public corruption," *id.* at 3. But the public, the Government argues, nevertheless should accept on faith that the sealed judicial records at issue in this case[1] have "little relevance" to the integrity of their public servants or the prosecution of Defendant, *id.* at 1—even though the Government itself invoked suspected public corruption in its indictment, *see id.*, and even though Defendant repeatedly raised the connection in attempting to mount a defense, *see* Mem. of P. & A. in Supp. of Mot. on Non-Party

---

[1] As the *Times'* initial motion explained, those records include filings related to Defendant's motion to compel discovery, *see* ECF Nos. 59, 61, 70–73, 77–78, as well as exhibits to the Government's sentencing position, *see* ECF No. 125 (collectively, the "Handel Materials").

1

**REPLY IN SUPPORT OF MOTION OF NON-PARTY
LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

L.A. Times Commc'ns LLC to Intervene and Unseal at 4–5 ("*Times* Mem.").

The right of the press and public to access judicial records, however, ensures that the public is not reduced to taking the integrity of its public servants on faith. As the Ninth Circuit has explained, the public is entitled to "properly evaluate the fruits of the government's extensive investigation" for itself, *United States v. Kott*, 135 F. App'x 68, 70 (9th Cir. 2005), and nothing about that entitlement turns on whether charges were ultimately filed against the public officials the Government investigated alongside Defendant. On the contrary, transparency is especially vital in this context: "[T]he integrity of the law enforcement process would be substantially served" by permitting the public to judge for itself whether no charges were filed because the allegations were unfounded, or whether instead "failure to prosecute in the light of overwhelming probable cause substantially impugns the integrity of the prosecutorial function." *United States v. Hubbard*, 650 F.2d 293, 323 (D.C. Cir. 1980). In other words, the public has a right to know "whether the government had the evidence but nevertheless pulled its punches." *In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d 55, 66 (D.D.C. 2022) (unsealing warrant materials in closed investigation of public official that ultimately "resulted in no criminal charges" (internal citation omitted)).

For much the same reason, the Government's insistence on redacting any and all references to uncharged individuals simply cannot be reconciled with Circuit law: "The high public official has no privacy interest in freedom from accusations,

baseless though they may be, that touch on his conduct in public office or in his campaign for public office," *In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 373 (9th Cir. 2002), and private parties likewise "ha[ve] no privacy interest in allegations, baseless though they may be, bearing on the way [they] do[] business with public bodies," *id.* The Government's remaining interests, for their part, would justify—at most—tailored redactions that preserve the public's ability to understand this case's relationship to the "wave of bribery and influence-peddling" that has strained confidence in public servants "across California." Vartabedian, *supra*.

In short, the core logic of the right of access controls here: "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) (plurality opinion). And, having insisted that the sealed records at issue would explain the relationship between Defendant's prosecution and broader "allegations of public corruption," Gov't Opp'n at 3, the Government cannot justify denying the public's right to understand that relationship for itself. The Handel Materials should be unsealed, subject—at most—to any tailored redactions for which the Government can show a compelling justification.[2]

---

[2] The *Times* does not object to the Government's proposal that it be ordered to propose appropriate redactions within six weeks of the Court's ruling on the *Times*'s motion. The *Times* would urge that those proposed redactions be filed on the public docket—accompanied by public justifications—in order to give the *Times* an opportunity to respond to any remaining points of dispute. *See In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d at 61–62 (requiring that approach).

3
**REPLY IN SUPPORT OF MOTION OF NON-PARTY
LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

# ARGUMENT

## I. The First Amendment and common law presumptions of access attach to the Handel Materials.

Both the Constitution and federal common law guarantee a presumption of access to motions to compel in criminal proceedings, *see In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999) (First Amendment presumption); *United States v. Miske*, No. 19-cr-00099, 2022 WL 1073797, at *3 (D. Haw. Apr. 8, 2022) (common law presumption), and the Government's brief fails to surface a case saying otherwise. That should be no surprise, since "the First Amendment grants the public a presumptive right to access nearly every stage of post-indictment criminal proceedings . . . as well as records filed in those criminal proceedings." *Civ. Beat L. Ctr. for the Pub. Int., Inc. v. Maile*, No. 23-15108, 2024 WL 3958954, at *4 (9th Cir. Aug. 28, 2024).[3] The Government's contrary position relies on a sleight of hand: conflating motions to compel with a varied range of other records under the misleadingly broad umbrella of "criminal discovery."[4] But the gambit does not work.

---

[3] As *Civil Beat* makes clear, the Government's suggestion that the Ninth Circuit has walked back the holding of *Associated Press v. U.S. District Ct. for Cent. Dist. of Cal.*, 705 F.2d 1143 (9th Cir. 1983), that the First Amendment presumption attaches to criminal "pretrial documents in general" is meritless, *Civ. Beat L. Ctr.*, 2024 WL 3958954, at *4 (citing *Associated Press*, 705 F.2d at 1145, for just that proposition).

[4] *See United States v. Sleugh*, 896 F.3d 1007, 1013–14 (9th Cir. 2018) (Rule 17(c) subpoena materials); *United States v. Kravetz*, 706 F.3d 47, 53–54 (1st Cir. 2013) (same); *United States v. Nickens*, 809 F. App'x 584, 591 (11th Cir. 2020) (transcript of *in camera* inspection of potential *Brady* material); *United States v. Anderson*, 799 F.2d 1438, 1440 (11th Cir. 1986) (voluntary notice of prior-acts evidence); *United States v. Gonzales*, 150 F.3d 1246, 1250 (10th Cir. 1998) (documentation related to requests for indigent legal services under the Criminal Justice Act).

Take *United States v. Sleugh*, 896 F.3d 1007 (9th Cir. 2018), the authority on which the Government principally relies. That case addressed access not to a motion to compel, but to a criminal defendant's applications and supporting documents seeking the issuance of Rule 17(c) subpoenas—in other words, it dealt with third-party discovery. *See id.* at 1012. And the Court's analysis, in turn, was tethered to that posture, underlining that access "could reveal counsel's trial strategies or defense theories to the opposing party, here, the government." *Id.* That concern obviously has no relevance to a motion to compel *directed to the Government itself*. And while a third-party subpoena may have only a tenuous relationship to the purpose of the right of access—"assuring freedom of communication on matters relating to the functioning of government," *Richmond Newspapers*, 448 U.S. at 575—a motion to compel the *Government*'s compliance with its obligations is "directly related" to that purpose. *See In re Grand Jury Subpoena*, 103 F.3d 234, 242 n.9 (2d Cir. 1996) (noting as much with respect to a civil motion to compel disclosure of surveillance); *see also id.* at 242 ("[P]ublic scrutiny of the legal process, and of a wiretapping case in particular, serves as a check on potential governmental abuse in both the fact-finding and trial stages of a case.").[5] For just that reason, other federal courts have warned against mechanically importing "the discovery-nondiscovery dichotomy"

---

[5] *In re Grand Jury* subpoena ultimately concluded that any presumption would have been overcome in that case by grand jury secrecy, *see id.*, a concern the Government has not raised here.

from the civil context to the criminal one, where the public's ability to evaluate and check the use and potential misuse of prosecutorial authority is at stake. *United States v. Wecht*, 484 F.3d 194, 209 (3d Cir. 2007). The same principle controls here.

With those distinctions in view, it should be no wonder that the only district court in this Circuit to address the sealing of a motion to compel post-*Sleugh* recognized application of the strong common law presumption of access. *See Miske*, 2022 WL 1073797, at *3. The Government attempts to distinguish *Miske* on the theory that Defendant's motion in this case was denied for lack of compliance with the local rules, which the Government takes to mean that no meaningful action was taken. Setting aside the fact that *Miske* is not distinguishable on that ground, *see id.* at *1 n.2 (noting that the motion to compel in that matter "was not resolved . . . and remain[ed] pending" as of the order identifying a presumption of access), "no court has held or even suggested that the public character of judicial records depends on whether the proceedings have progressed to a stage requiring a judge to act on the papers," *Courthouse News Serv. v. Planet*, 947 F.3d 581, 591–92 (9th Cir. 2020). For that matter, the Ninth Circuit—and other courts of appeals—have forthrightly rejected the notion that the right of access turns on *how* a court resolves an issue before it, *see Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016) ("Nothing in our precedent suggests that the right of access turns on any particular result."); *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661,

667–68 (D.C. Cir. 2017) (Garland, J.) (right of access to parties' arguments does not depend on whether court expressly relied on them).

As a final fallback position, the Government moves from denying a right of access to the motion to compel filings to denying a right of access to chunks of material in or attached to them—wiretap materials, investigative reports, and interview transcripts. But the threshold question whether a presumption of access attaches looks to "categories of documents," not to particular sentences or paragraphs within them. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (emphasis added); *see also id.* at 1184–85 (rejecting the argument that documents containing information subject to a law enforcement privilege are categorically exempt from the presumption of access). As the *Times*' opening memorandum explained, *see Times* Mot. at 11–12, the presumption of access attaches to "pretrial motion papers *containing* Title III materials," *United States v. Urlacher*, 136 F.R.D. 550, 557 (W.D.N.Y. 1991) (emphasis added), just as civil-discovery materials otherwise subject to a good-cause standard become subject to the presumption of access when "attached to dispositive motions," *Kamakana*, 447 F.3d at 1180. Whether the First Amendment or common law presumption would attach to those documents in the abstract had they not been "incorporate[ed] into the parties' arguments and the Court's analysis" is irrelevant here. *United States v. Kwok Cheung Chow*, No. 14-cr-00196, 2015 WL 5094744, at *4 (N.D. Cal. Aug. 28, 2015).

In sum, motions to compel in criminal cases—filings that squarely implicate the public's ability to oversee the exercise of prosecutorial power on its behalf—are presumptively public under the First Amendment and the common law. The Government can justify continued sealing here only if—and only to the extent that—it can prove a compelling basis for redacting portions of the Handel Materials.

II. **The Government has not demonstrated that its proposed redactions are necessitated by interests sufficient to overcome either the First Amendment or the common law presumptions of public access.**

On the second step of the unsealing analysis—whether the Government can demonstrate a "compelling interest" in support of particular redactions for First Amendment purposes, *Oregonian Publ'g Co. v. U.S. Dist. Ct. for Dist. of Or.*, 920 F.2d 1462, 1466 (9th Cir. 1990), or "compelling reasons" for purposes of the common law, *Kamakana*, 447 F.3d at 1178 —the Government's Opposition falls short.[6] Its proposed redactions are significantly and impermissibly overbroad.

A. **Redacting all references to uncharged parties cannot be justified here.**

The issue is starkest with respect to the Government's proposal that any and all discussion of uncharged individuals be redacted, a step that would destroy the public's ability to understand the "allegations of public corruption" that the Government concedes sparked its prosecution of Defendant. Gov't Opp'n at 3. As

---

[6] For the reasons given in the *Times*'s opening memorandum, the same would be true under a good-cause standard. *See Times* Mot. at 16–18.

the *Times*' opening brief explained, it is practically a truism that "[t]he public has a strong interest in assessing the truthfulness of allegations of official misconduct, and whether agencies that are responsible for investigating and adjudicating complaints of misconduct have acted properly and wisely." *Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1297, 1302 (N.D. Cal. 1995); *see Times* Mot. at 14.

Relying on out-of-circuit authority for the proposition that due process demands secrecy regardless, the Government fails to grapple with the Ninth Circuit's decision in *In re McClatchy Newspapers, Inc.*, 288 F.3d 369 (9th Cir. 2002), which held that neither public officials nor the private parties they do business with have a legitimate privacy interest in connection with allegations of public corruption— "baseless though they may be," *id.* at 373.[7] The Circuit could hardly have spoken more clearly—in a case involving bribery in the real estate industry no less, *see id.* at 374—and courts in this District appropriately have followed its lead, *see In re Appl. of Consumer Watchdog & L.A. Times Commc'ns LLC*, No. 2:24-cv-01650, 2024 WL 2104448, at *3 (C.D. Cal. Apr. 11, 2024). Other circuits, for their part, likewise recognize that the public's entitlement to understand evidence of possible official misconduct is not limited to information the Government considers adequately

---

[7] Any risk of prejudice is further diminished by the sheer detail of the records at issue, which the Government notes stretch to "665 pages." Gov't Opp'n at 3 n.4. As the Ninth Circuit observed in *United States v. Kott*, 135 F. App'x 69 (9th Cir. 2005), any risk of unfair reputational harm is diminished where the records "contain detailed explanations of the suspected involvement of all persons named in the materials," *id.* at 71—as the materials at issue here necessarily would.

substantiated.  *See In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022) (identifying a "powerful public interest" in evaluating "potential" public corruption that went uncharged); *United States v. Smith*, 787 F.2d 111, 116 (3d Cir. 1986) (holding that reputational harm of a public official's "possible connection" to criminal investigation was an inadequate justification for sealing judicial records).

First principles make the same point clear.  If the Government's sense of what the public needs to know were dispositive, the right of access would play no meaningful role as a "curb on prosecutorial or judicial misconduct."  *United States v. Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011) (internal citation omitted).  Here, the Government and the Defendant both chose to link the proceedings in this case to the urgent public interest in understanding public corruption in California.  The Government cannot justify redacting the information necessary to understand that link—including the identities of the uncharged parties.

**B.  The Government's remaining interests would justify—at most—tailored redactions that preserve the ability of the press and public to understand this case's connection to possible public corruption.**

The *Times* does not dispute that the remaining interests the Government identifies can, when applicable in appropriate cases, justify redacting judicial records—but any secrecy must be narrowly tailored to the facts of the particular case.  Protecting the identify of informants, for example, can be a compelling interest that justifies redaction, but not in cases where "there is no suggestion that the informants

listed in the affidavits are in any danger whatsoever." *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 592 (D. Md. 2004). Neither does that interest stretch to redacting any and all *information* that witnesses may have provided—a step that would significantly undermine the public's ability to understand this case's significance to evaluating the fitness of public officials—as opposed to "simply redacting the identity and personal identifiers of the informants." *In re Appl. of N.Y. Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 91 (D.D.C. 2008). The key point in each respect is that the Government's showing in support of any particular redaction must be tailored to the facts of this case—a bar that its current submission does not clear.

The same is true, to take another of the Government's asserted interests, of the secrecy of law enforcement techniques. There may be instances in which disclosure of the technical features of an investigative tool would compromise legitimate interests but that rationale is typically limited "to an ongoing investigation." *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 885 (S.D. Tex. 2008) (rejecting indefinite sealing order with respect to information on pen register configuration). Stretched beyond that limit, the argument "proves too much"—it risks permitting the Government "to cloak in secrecy *any* investigative technique, from the most mundane search warrant to the most sophisticated electronic surveillance, thereby avoiding the disinfecting rays of public scrutiny." *Id.* at 886.

And here, the vagueness of the Government's discussion of "sensitive law enforcement techniques" is especially concerning in light of its overbroad conception of the secrecy Title II justifies—one that would make it effectively impossible for the public to understand the portions of the Handel Materials most essential to evaluating the fitness of their public servants. But at this stage, it is impossible to tell from the Government's papers whether the redactions it has in mind are slender or sweeping.

On each front, the *Times* is handicapped in responding to the Government's argument for redactions without the ability to review a specific proposal in context, to judge how "limited and tailored" they would in fact be. Gov't Opp'n at 15. For just that reason, the *Times* would urge the Court to follow the course taken by *In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d 55 (D.D.C. 2022)—a case that, like this one, involved a closed investigation of possible public corruption—by ordering the Government to propose its redactions on the public docket, accompanied by public justifications to which the *Times* can meaningfully respond. Otherwise, the risk is acute that overbroad redactions will undermine the core public interest at stake here: the "paramount public interest in a free flow of information to the people concerning public officials, their servants." *Garrison v. Louisiana*, 379 U.S. 64, 77 (1964).

In sum, any redactions—whatever the heading under which the Government may attempt to justify them—must preserve that ability "to determine the extent to which wrongdoers have been held accountable," *In re Appl. of Consumer Watchdog*

12

& *L.A. Times Commc'ns LLC*, 2024 WL 2104448, at *3, upholding the "[p]ublic confidence in government" that "lies at the core of a well functioning democracy," *id.*

## CONCLUSION

For the reasons set forth above, the *Los Angeles Times* respectfully requests that the Court grant its motion to intervene and order the Government to propose—on the public docket and accompanied by public justifications—redactions consistent with the First Amendment and common law rights of access to the Handel Materials.

Dated: September 16, 2024

                                         s/ *Katie Townsend*
                                         Katie Townsend
                                         REPORTERS COMMITTEE FOR
                                         FREEDOM OF THE PRESS

                                         *Counsel for Non-Party Intervenor*
                                         LOS ANGELES TIMES
                                         COMMUNICATIONS LLC